Mr. James W. Denhardt City of Treasure Island Attorney 2700 First Avenue North St. Petersburg, Florida 33713
Dear Mr. Denhardt:
As the attorney for the City of Treasure Island, you ask substantially the following question:
May a municipality enact and enforce ordinances to prohibit the unauthorized trespass upon, or the unauthorized mooring of a boat to, a privately-owned dock located over state-owned submerged lands within the corporate limits of the municipality, when the property owner's right to such dock is derived through riparian or littoral property rights?
In sum:
A municipality may enact and enforce an ordinance to prohibit the unauthorized trespass upon or the unauthorized mooring of a boat to a privately-owned dock located over state-owned submerged lands, within the city's corporate limits, consistent with the general laws applicable to trespass.
The general legal principle applicable to your inquiry is that a municipality has civil and criminal jurisdiction over property within its corporate boundaries and may regulate and restrict certain activities reasonably calculated to protect the public health, safety, and welfare.[1] The power of a municipality to regulate, however, is subject to the state's paramount power to regulate and control the use of its sovereign lands. To the extent that any such regulation has been preempted by the state or is inconsistent with general law or with regulations adopted by the state, any attempted municipal regulation would be invalid.[2]
Application of a trespass statute or ordinance to a private dock would appear to depend upon the nature of the ownership of such property. It has been recognized that riparian owners have historically been entitled to greater rights in relation to the waters that border their land than enjoyed by the public generally.[3] As riparian owners, they have the exclusive right of access over their own property to the water. The public has no right to cross the riparian owner's private property to reach the navigable waters.[4]
Subject to applicable regulations and permitting procedures, the owner of riparian property may construct and maintain a wharf, dock, or pier from his or her land to the navigable portion of adjoining waters.[5] This entitlement, however, is subject to the paramount rights of the public and the private rights of other riparian landowners.[6] The Supreme Court of Florida in several cases has found this entitlement to be a common law right that accompanies the ownership of the riparian property.[7]
Thus, riparian property owners in Florida have a qualified right to build docks or "wharf out" to navigable water and have exclusive rights to use their private property. It would appear, therefore, that a dock or wharf constructed by the riparian owner with the consent of the state operates as an extension of the riparian owner's private property interest that may be protected under the laws of this state.
Section 810.09(1), Florida Statutes, provides:
Whoever, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance as to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation as described in s. 810.011, commits the offense of trespass on property other than a structure or conveyance.[8]
In the absence of actual notice being given to an individual who is on or moored to a private dock without permission, the property must either be posted, fenced or under cultivation in order to provide the necessary element of notice. Of these three methods of notice, posting and fencing lend themselves more readily in applying the trespass statute to a private wharf or dock. While no definition for the term "posting" is provided for purposes of the statute, the term "[p]osted land" is defined as
land upon which signs are placed not more than 500 feet apart along, and at each corner of, the boundaries of the land, upon which signs there appears prominently, in letters of not less than 2 inches in height, the words "no trespassing" and in addition thereto, the name of the owner, lessee, or occupant of said land. Said signs shall be placed along the boundary line of posted land in a manner and in such position as to be clearly noticeable from outside the boundary line.[9]
Likewise, fencing is defined in terms of land, requiring a fence of substantial construction at least three feet high to enclose the land. No fence, however, is required where the boundary of the land is formed by water.[10]
It would appear that the paramount concern is that an individual be given notice, either by actual communication or through signs or physical boundaries, that defines the area of property subject to the trespass law and warns against entering or remaining on the property.[11] The placement of signs or fencing in compliance with the requirements in Chapter 810, Florida Statutes, appears to provide the necessary notice to allow the trespass statute to be applied to the recognized property rights attendant to a private dock.
Accordingly, it is my opinion that the city may enact an ordinance prohibiting the unauthorized trespass upon or the unauthorized mooring of a boat to a privately-owned dock located over state-owned submerged lands within the corporate limits of the municipality, where such ordinance is consistent with the trespass provisions in Chapter 810, Florida Statutes.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] See, 64 C.J.S. Municipal Corporations s. 1816 (1950); Carter v. Town of Palm Beach, 237 So.2d 130 (Fla. 1970); City of Miami Beach v. Texas Co., 194 So. 368 (Fla. 1940); and Ops. Att'y Gen. Fla. 79-71, 74-286 and 73-463.
[2] See, City of Miami Beach v. Forte Towers, Inc., 305 So.2d 764
(Fla. 1974).
[3] See, Board of Trustees of the Internal Improvement Trust Fund v. Madeira Beach Nominee, Inc., 272 So.2d 209, 214 (Fla. 2d DCA 1973).
[4] Id. at 214.
[5] Section 253.141(1), Fla. Stat. (1995), defines "riparian rights" as:
[T]hose incident to land bordering upon navigable waters. They are rights of ingress, egress, boating, bathing, and fishing and such others as may be or have been defined by law. Such rights are not of a proprietary nature. They are rights inuring to the owner of the riparian land but are not owned by him or her. They are appurtenant to and are inseparable from the riparian land. The land to which the owner holds title must extend to the ordinary high watermark of the navigable water in order that riparian rights may attach. Conveyance of title to or lease of the riparian land entitles the grantee to the riparian rights running therewith whether or not mentioned in the deed or lease of the upland.
[6] See, 65 C.J.S. Navigable Waters s. 73 (1966).
[7] See, Ferry Pass Inspectors' Shippers' Ass'n v. White's River Inspectors' Shippers' Ass'n, 48 So. 643 (Fla. 1909), and Freed v. Miami Beach Pier Corporation, 112 So. 841 (Fla. 1927).
[8] Section 810.011(1), Fla. Stat. (1995), defines "[s]tructure" for purposes of the trespass statute as "a building of any kind, either temporary or permanent, which has a roof over it, together with curtilage thereof." Clearly, therefore, a dock or wharf without a roof over it would not qualify as a structure under the trespass statute.
[9] Section 810.011(5)(a), Fla. Stat. (1995).
[10] See, s. 810.011(7), Fla. Stat. (1995).
[11] Cf., Pointec v. State, 614 So.2d 570 (Fla. 5th DCA 1993) (where property is not posted, simple trespass requires proof of actual communication to defendant of notice against entering or remaining on property).